UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| DARRELL GENE BRAVE, | ) | CASE NO. C13-0475-RSM-MAT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | RE: SOCIAL SECURITY DISABILITY |
| CAROLYN W. COLVIN, Acting | ) | APPEAL |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Darrell Gene Brave proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends this matter be AFFIRMED.

/ / /

/ / /

REPORT & RECOMMENDATION
PAGE -1

01 **FACTS AND PROCEDURAL HISTORY**

02 Plaintiff was born on XXXX, 1951.[1]  He has a master's degree in social work and

03 previously worked as a social worker.   (AR 114-15, 120, 619-20.)

04 Plaintiff filed applications for DIB and SSI, alleging disability since June 1, 2008.   (*See*

05 AR 94.)   While initially found not eligible for SSI, plaintiff was found disabled with respect to

06 his DIB claim as of September 1, 2010 on an initial determination, dated April 25, 2011.   (AR

07 31-43, 62-66.)   Plaintiff appealed, requesting an earlier onset date in March 2009.   (AR 67.)

08 In a May 2011 reconsideration decision, the initial determination was revised and plaintiff was

09 found not disabled as of the alleged onset date.   (AR 45-56.)   He timely requested a hearing,

10 alleging disability since March 2010.   (AR 70.)

11 ALJ Glenn Meyers held a hearing on January 11, 2012, taking testimony from plaintiff.

12 (AR 614-39.)   On February 3, 2012, the ALJ rendered a decision finding plaintiff not disabled.

13 (AR 15-28.)

14 Plaintiff timely appealed.   The Appeals Council denied plaintiff's request for review

15 on January 25, 2013 (AR 6-8), making the ALJ's decision the final decision of the

16 Commissioner.   Plaintiff appealed this final decision of the Commissioner to this Court.

17 **JURISDICTION**

18 The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

19 **DISCUSSION**

20 The Commissioner follows a five-step sequential evaluation process for determining

21 ————————————————

22 1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT & RECOMMENDATION
PAGE -2

01   whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

02   must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

03   not engaged in substantial gainful activity since the alleged onset date of June 1, 2008.   At step

04   two, it must be determined whether a claimant suffers from a severe impairment.   The ALJ

05   found severe plaintiff's diabetes mellitus, with an early onset of neuropathy.   He found a

06   variety of other impairments not severe.   Step three asks whether a claimant's impairments

07   meet or equal a listed impairment.   The ALJ found plaintiff's impairments did not meet or

08   equal the criteria of a listed impairment.

09        If a claimant's impairments do not meet or equal a listing, the Commissioner must

10   assess residual functional capacity (RFC) and determine at step four whether the claimant has

11   demonstrated an inability to perform past relevant work.   The ALJ found plaintiff had the RFC

12   to perform medium work, but could only occasionally climb ladders, ropes, and scaffolds, was

13   limited to frequent feeling in the bilateral upper extremities, and should avoid concentrated

14   exposure to extreme cold, extreme heat, vibration, and hazards.   With that RFC, the ALJ found

15   plaintiff able to perform his past relevant work as a social worker.

16        If a claimant demonstrates an inability to perform past relevant work or has no past

17   relevant work, the burden shifts to the Commissioner to demonstrate at step five that the

18   claimant retains the capacity to make an adjustment to work that exists in significant levels in

19   the national economy.   The ALJ alternatively, with consideration of the Medical-Vocational

20   Guidelines, found plaintiff had the capacity to perform other jobs existing in significant

21   numbers in the national economy.   The ALJ, therefore, concluded plaintiff had not been under

22   a disability from June 1, 2008 through the date of the decision.

REPORT & RECOMMENDATION
PAGE -3

01      This Court's review of the final decision is limited to whether the decision is in

02 accordance with the law and the findings supported by substantial evidence in the record as a

03 whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

04 more than a scintilla, but less than a preponderance; it means such relevant evidence as a

05 reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

06 F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

07 supports the final decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

08 F.3d 947, 954 (9th Cir. 2002).

09      Plaintiff argues new evidence supports a remand under sentence six of 42 U.S.C. §

10 405(g), that the ALJ erred in the consideration of his mental health issues and his credibility,

11 and that the RFC, step four, and step five findings are not supported.   He requests remand for

12 further proceedings, with the ability to provide new evidence.   The Commissioner agrees that

13 the step five finding lacks the support of substantial evidence, but maintains the ALJ's decision

14 through step four is supported and should be affirmed.

15                    Mental Impairments

16      At step two, a claimant must make a threshold showing that his medically determinable

17 impairments significantly limit his ability to perform basic work activities.  *See Bowen v.*

18 *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).   "Basic work

19 activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§

20 404.1521(b), 416.921(b).   "An impairment or combination of impairments can be found 'not

21 severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

22 effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

01  1996) (quoting Social Security Ruling (SSR) 85-28).   "[T]he step two inquiry is a de minimis

02  screening device to dispose of groundless claims."   *Id.* (citing *Bowen*, 482 U.S. at 153-54).

03        Plaintiff takes issue with the ALJ's step two conclusion that his mental impairments are

04  not severe.   In particular, he points to the ALJ's finding that the "overall record establishes no

05  more than mild cognitive limitations."   (AR 20.)   He contends that, while mild, these

06  limitations "have more than a minimal affect on his ability to perform his past work or any other

07  work."   (Dkt. 14 at 6.)   Plaintiff points to new evidence, as described and discussed below, as

08  supporting his contention of error.   He further maintains the alleged error cannot be deemed

09  harmless because, even if non-severe, the ALJ must consider all limitations, including those not

10  severe, in determining RFC at step four.   §§ 404.1545(e), 416.945(e); SSR 96-8p.   He avers

11  error in that even mild cognitive limitations assessed by examining psychologist Dr. David

12  Dixon (*see* AR 351) were ignored and he was found capable of performing highly skilled "SVP

13  7" work.[2]   However, for the reasons discussed below, plaintiff fails to demonstrate error.

14        In finding no severe mental impairments at step two, the ALJ noted that the record since

15  June 2008 included "essentially no mental health treatment and minimal complaints of mental

16  symptoms."   (AR 20.)   He found no more than mild limitations established in the overall

17  record, pointing, as an example, to plaintiff's May 2010 report of his ability to pay attention for

18  up to two hours at a time and to follow written and spoken instructions "very well."   (*Id.* citing

19  AR 138).)   The ALJ pointed to the results of the April 2011 examination by Dr. Dixon,

---

20        2 "'SVP' refers to the 'specific vocational preparation' level which is defined in the [Dictionary
of Occupational Titles (DOT)] as 'the amount of lapsed time required by a typical worker to learn the

21  techniques, acquire the information, and develop the facility needed for average performance in a
specific job-worker situation.'" *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1231 n.4 (9th Cir. 2009) (citing

22  DOT, Appx. C, page 1009 (4th ed. 1991)).   "SVP 7 means 'over 2 years up to and including 4 years.'"
*Id.*

REPORT & RECOMMENDATION
PAGE -5

01   including, *inter alia*, memory index scores falling in the low average to average range, and,

02   overall, "mild cerebral dysfunction and cognitive difficulties."   (*Id.* (citing AR 346-52).)   He

03   also noted a September 2011 examination by Dr. Scott Nielsen in which plaintiff "obtained a

04   near perfect score of 29 out of 30 on a mental status examination [(MSE)], consistent with intact

05   cognitive functioning."   (*Id.* (citing AR 385-86).)   The ALJ found plaintiff's activities

06   consistent with no more than mild limitations in cognitive and social functioning, noting, *inter*

07   *alia*:   that plaintiff's last job ended due to a state contract, not an inability to perform the job;

08   that he continued to apply for jobs in his field, "going to about 50 interviews from 2008 through

09   2010."; his perception he was not hired due to his age; that he returned to school for one quarter

10   in 2009 and made the Dean's list; that, from 2008 through 2010, he helped people start and

11   develop social service programs, volunteering some six hours per week, helping people with

12   paperwork and navigating the system; and his testimony he could likely work part-time now,

13   four hours per day, five days per week.   (*Id.*)

14         The ALJ also separately discussed and assessed relevant medical opinions at step two.

15   He noted Dr. Dixon's opinion that plaintiff had "good reasoning skills, average ability to

16   understand, average ability to sustain concentration, and good ability to persist[,]" and would be

17   able to adapt to new environmental conditions.   (AR 21 (citing AR 346-52).)   The ALJ gave

18   that opinion great weight "because it was based on psychometric testing, a [MSE], and an

19   interview[.]"   (*Id.*)   He gave little weight to an assessed Global Assessment of Functioning

20   (GAF) of 55, indicating moderate symptoms or moderate difficulty in functioning, Diagnostic

21   and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR), finding it

22   "internally inconsistent with [the] narrative opinion, which indicates . . . no more than mild

REPORT & RECOMMENDATION
PAGE -6

01  deficits in social or cognitive functioning." (AR 21.) The ALJ added that his finding of

02  non-severity considered plaintiff's lack of mental health treatment and activities, including "an

03  active pursuit of full-time employment in social work, a field that it not only highly skilled but

04  requires intense interaction with others[.]" (*Id*.)

05        The ALJ additionally considered the opinion of reviewing State agency physician Dr.

06  Diane Fligstein, who assessed a moderate limitation in concentration, persistence, or pace,

07  found plaintiff could understand and remember both simple and detailed tasks, and stated

08  plaintiff "might have occasional difficulties with his symptoms, but he could perform work at a

09  consistent pace and complete a normal workweek in a competitive environment." (*Id*. (citing

10  AR 372, 378).) The ALJ gave some weight to Dr. Fligstein's opinions, but concluded plaintiff

11  had only mild deficits in concentration, persistence, and pace, and was able to perform simple,

12  detailed, and complex tasks. (*Id*.) He pointed, in support, to plaintiff's May 2010 report as to

13  his abilities, his performance on April 2011 psychometric testing and the September 2011

14  MSE, and the fact that Dr. Fligstein was unaware of plaintiff's activities. (*Id*.)

15        Finally, the ALJ reiterated the factors discussed above in applying the "special

16  technique" to the identified mental impairments. He concluded plaintiff had only mild

17  limitations in activities of daily living, social functioning, and concentration, persistence, and

18  pace. (AR 20-21.)

19        Plaintiff fails to demonstrate that the ALJ ignored or improperly assessed the evidence

20  from Dr. Dixon, or any other evidence of record. Instead, the ALJ's decision reflects the

21  proper consideration of the evidence at step two, and the provision of several different reasons

22  for finding plaintiff's mental impairments not severe. As the Commissioner suggests,

REPORT & RECOMMENDATION
PAGE -7

01  plaintiff, at most, speculates that an assessed mild limitation in concentration-related abilities

02  would prevent him from working.

03       Nor does plaintiff support a contention that the ALJ failed to consider all of his

04  impairments at step four.   An RFC assessment at step four considers the most a claimant can

05  do considering his limitations or restrictions, 20 C.F.R. §416.945(a); SSR 96-8p, and need not

06  account for limitations or impairments the ALJ properly rejected, *Bayliss v. Barnhart*, 427 F.3d

07  1211, 1217-18 (9th Cir. 2005).   Indeed, even impairments deemed severe do not, as a matter of

08  course, necessarily result in RFC limitations.   *See* 20 C.F.R. § 416.945(a) ("impairment(s) and

09  any related symptoms . . . *may* cause physical and mental limitations that affect what you can do

10  in a work setting.") (emphasis added); *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1228-29 (9th

11  Cir. 2009) ("Bray offers no authority to support the proposition that severe mental impairment

12  must correspond to limitations on a claimant's ability to perform basic work activities.");

13  *Griffeth v. Comm'r of Soc. Sec.*, No. 06-1236, 2007 U.S. App. LEXIS 3153 at *8-10 (6th Cir.

14  Feb. 9, 2007) ("The ALJ's finding that the limitation was more than minimal [at step two]. . .

15  was not inherently inconsistent with his finding that the limitation has 'little effect' on the

16  claimant's ability to perform basic work-related activities."); *Shandley v. Astrue*,

17  C11-0349-JLR, 2011 U.S. Dist. LEXIS 143491 at *6-8 (W.D. Wash. Oct. 5, 2011) (citing other

18  unpublished opinions finding same), *adopted by* 2011 U.S. Dist. LEXIS 136355 (Nov. 28,

19  2011).

20       The ALJ in this case stated he considered all symptoms in assessing the RFC.   (AR 23.)

21  The mere fact that he did not include any limitations associated with mental impairments does

22  not demonstrate error.   Instead, the omission of any such limitations reflects the ALJ's

REPORT & RECOMMENDATION
PAGE -8

01 conclusion that plaintiff's mental impairments did not impose limitations on his ability to

02 perform basic work activities.

03       "[T]he ALJ is responsible for determining credibility, resolving conflicts in medical

04 testimony, and for resolving ambiguities."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

05 1998) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  *Accord Carmickle v.*

06 *Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Thomas*, 278 F.3d at 956-57.   The ALJ

07 must support his findings with "specific, cogent reasons."  *Reddick*, 157 F.3d at 722 (citing

08 *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)).   When evidence reasonably supports

09 either confirming or reversing the ALJ's decision, we may not substitute our judgment for that

10 of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  *Accord Morgan v.*

11 *Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is

12 susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

13 upheld.") (citing *Andrews*, 53 F.3d at 1041).

14       Here, the ALJ's consideration of plaintiff's mental impairments reflects a thorough

15 examination of the medical and other evidence of record.   Contrary to plaintiff's contention,

16 the ALJ's decision reveals no error at step two or beyond.

17                                    <u>New Evidence</u>

18       Plaintiff relies on new evidence to support error in relation to his mental impairments.

19 The new evidence, not provided to the ALJ or the Appeals Council, consists of an assessment

20 conducted by a psychology student and supervised by a physician.    The report found:

21 "Though [plaintiff's] day-to-day functioning did not appear impaired in obvious or dramatic

22 ways . . ., these memory limitations are significantly influencing how [he] has to function to

REPORT & RECOMMENDATION
PAGE -9

01  successfully perform daily activities." (Dkt. 14-1 at 6 ("For example, he requires making

02  multi-step instruction lists for simple activities like taking a bus and keeping written records of

03  all newly acquired information.")) The report reflected a "clinically significant decline in

04  cognitive capacity (one full standard deviation) from his previous level of functioning." (*Id*.)

05  The report further recommended, with regard to future employment: "He may not be as

06  efficient now as he used to be when employed in a position that requires making daily important

07  decisions, meeting hard deadlines, and reliance on short and long term memories." (*Id*. at 7.)

08      In order to justify a "sentence six" remand, evidence presented must be both new and

09  material, and there must be good cause for the failure to incorporate the evidence in the record

10  earlier. 42 U.S.C. § 405(g). *Accord Melkonyan v. Sullivan*, 501 U.S. 89, 98-100 (1991). To

11  be material under §405(g), the new evidence "must bear 'directly and substantially on the

12  matter in dispute.'" *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (quoting *Ward v.*

13  *Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)). Plaintiff must also "demonstrate that there is a

14  'reasonable possibility' that the new evidence would have changed the outcome of the

15  administrative hearing." *Id*. (citing *Booz v. Sec'y of Health & Human Servs*., 734 F.2d 1378,

16  1380-81 (9th Cir. 1984)). A showing of good cause requires that a plaintiff demonstrate the

17  new evidence was unavailable earlier, and good cause for not having sought new evidence

18  earlier. *Id*. at 463. Good cause may not be established "by merely obtaining a more favorable

19  report once his or her claim has been denied." *Id*.

20      Plaintiff maintains the new report is material in bearing on the ALJ's finding as to the

21  absence of any significant mental impairments and the conclusion he is capable of performing

22  his past relevant work. He adds that, while largely consistent with the assessment conducted

01 by Dr. Dixon, the new evidence reflects a comprehensive clinical interview not conducted by

02 that physician, and shows that some of his difficulties result not just from memory problems,

03 but also from a decline in intellectual functioning.   Plaintiff maintains good cause for the

04 failure to provide this information because he had not been fully examined by his physicians

05 until just before the ALJ's decision and thereafter sought additional testing.   He contends he

06 was unable to submit the report prior to the Appeals Council's denial of review because of

07 delay in getting the report.

08          The Court does not find plaintiff's contention of materiality persuasive.   The new

09 medical report can be construed as including findings favorable to plaintiff's position.

10 However, it is also contains opinions detracting from plaintiff's assertion of severe mental

11 impairments, imposing significant limitations on his ability to perform work.   For example, the

12 evaluators encouraged plaintiff "to continue his search for employment that will be suitable for

13 his current ability level."  (Dkt. 14-1 at 7.)  They qualified the statement as to lessened

14 efficiency by stating:   "However, Mr. Brave has all of the skills necessary to succeed at a job

15 that uses his critical thinking abilities, interpersonal skills, and previously gained knowledge[,]"

16 and opined that "[h]is success is more likely if he consistently utilizes his new coping skills

17 such as making visual reminders for himself and keeping written records of daily tasks."  (*Id*.)

18 The evaluators further assessed a GAF of 65, reflecting "some mild symptoms" or "some

19 difficulty" in functioning, "but generally functioning pretty well, has some meaningful

20 interpersonal relationships."   DSM-IV-TR at 34.

21          Nor can it otherwise be said that there is a reasonable possibility the new evidence

22 would have changed the outcome of the ALJ's decision.   As plaintiff concedes, the report is

REPORT & RECOMMENDATION
PAGE -11

01   generally consistent with the assessment from Dr. Dixon, evidence already contained within the

02   record and properly assessed by the ALJ.   Plaintiff further ignores the totality of the ALJ's step

03   two analysis, including consideration of the absence of any mental health treatment and the

04   evidence of plaintiff's activities, as well as the credibility assessment, as discussed below.

05          Plaintiff also fails to establish good cause.   He maintains he had not been fully

06   examined by his physicians until just before the ALJ's decision.   Yet, there remains a

07   significant gap between, for example, Dr. Nielson's September 6, 2011 assessment and the

08   ALJ's January 11, 2012 hearing and February 3, 2012 decision.   Nor does plaintiff explain

09   why he waited some seven months after the ALJ's decision to obtain a new evaluation.   (*See*

10   Dkt. 14-1 at 1 (dates of evaluation "September 21, 2012 – October 12, 2012").)   Further, while

11   some delay is understandable, plaintiff provides minimal explanation as to why the new report

12   – dated November 12, 2012 – could not have been provided prior to the Appeals Council's

13   January 25, 2013 decision.   For these reasons, and for the reasons discussed above, plaintiff

14   fails to justify a sentence six remand.

15                                      <u>Credibility</u>

16          The rejection of a claimant's credibility requires the provision of clear and convincing

17   reasons.   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).   "General findings are

18   insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

19   undermines the claimant's complaints."   *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

20   "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

21   inconsistencies either in his testimony or between his testimony and his conduct, his daily

22   activities, his work record, and testimony from physicians and third parties concerning the

REPORT & RECOMMENDATION
PAGE -12

01 nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec.*

02 *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

03     The ALJ in this case found that while plaintiff's medically determinable impairments

04 could reasonably be expected to cause the alleged symptoms, his statements concerning the

05 intensity, persistence, and limiting effects of those symptoms were not credible to the extent

06 inconsistent with the RFC assessed.   As discussed below, the ALJ provided a number of clear

07 and convincing reasons for his decision.

08     The ALJ pointed to evidence of plaintiff's failure to comply with treatment.   (AR 24.)

09 An ALJ appropriately considers an unexplained or inadequately explained failure to seek

10 treatment or follow a prescribed course of treatment. *Tommasetti v. Astrue*, 533 F.3d 1035,

11 1039 (9th Cir. 2008).   Plaintiff correctly observes that an ALJ should not draw inferences from

12 the failure to seek or pursue treatment without first considering explanations for that failure,

13 including an inability to afford treatment.   SSR 96-7p; *accord* SSR 82-59.   However, plaintiff

14 fails to undercut the ALJ's determination that plaintiff unpersuasively based his lack of full

15 compliance with treatment on insufficient funds.   (AR 24.)   The ALJ correctly observed, for

16 example, that plaintiff's treating physician stated his medication noncompliance "has always

17 been an issue" in May 2007 (AR 268), a time when plaintiff was employed.   The ALJ further

18 observed that, while plaintiff stopped working in June 2008, he began collecting unemployment

19 benefits and continued to receive those benefits through September 2010 (AR 108-09, 619).

20 While plaintiff may have later been unable to comply with treatment recommendations due to a

21 lack of funds, the ALJ's consideration of his history of non-compliance reflects a rational

22 interpretation of the record and an appropriate credibility consideration.

01    The ALJ considered the existence of few objective findings in the record despite the

02  medication noncompliance, concluding the "fairly unremarkable" examination findings did not

03  support plaintiff's testimony he could only walk one block before needing to rest and could lift

04  only ten pounds.  (AR 25.)  "While subjective pain testimony cannot be rejected on the sole

05  ground that it is not fully corroborated by objective medical evidence, the medical evidence is

06  still a relevant factor in determining the severity of the claimant's pain and its disabling

07  effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *accord* SSR 96-7p.

08  Plaintiff points to a single November 2011 record reflecting a finding of decreased "[l]ight

09  touch sensation" from the midcalf down (AR 545) as evidence the ALJ impermissibly ignored,

10  and as inconsistent with earlier evidence relied on by the ALJ.  However, the ALJ need not

11  discuss each piece of evidence in the record.  *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th

12  Cir. 1984).  Instead, he "must explain why 'significant probative evidence has been rejected.'"

13  *Id.* (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).  In this case, the ALJ fairly

14  discussed the record, providing numerous relevant examples in support of his conclusions,

15  including a later November 2011 record reflecting a finding of intact motor and sensory

16  functioning in plaintiff's extremities.  (AR 25 (citing AR 589).)

17    The ALJ noted that, while plaintiff alleged he could only lift ten pounds, he reported his

18  ability to lift up to fifty pounds in May 2010.  (*Id.* (citing AR 138).)  Plaintiff unsuccessfully

19  attempts to explain this discrepancy.  (*See* Dkt. 16 at 5.)  The ALJ accurately depicted

20  plaintiff's testimony that, following a surgery and during recovery, lifting ten pounds was

21  "about as far as [he] got[,]" and subsequently noted that reported problems with malaise and

22  weakness following a September 2011 surgery were expected to improve with the completion

01  of antibiotics.   (AR 25 (citing AR 634, 605-07).)   The ALJ, therefore, appropriately relied on

02  an inconsistency between plaintiff's allegation and evidence in the record.  *Tonapetyan v.*

03  *Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Light*, 119 F.3d at 792.

04       The ALJ found plaintiff's testimony as to various symptoms not corroborated by the

05  record, which the ALJ construed as reflecting plaintiff was "relatively asymptomatic when

06  compliant with medications[.]"   (AR 25 (citing AR 199-309, 380-613).)   The ALJ, therefore,

07  properly relied on the existence of contradictory evidence in the record.   *Carmickle*, 533 F.3d

08  at 1161.

09       The ALJ took note of the fact that, while plaintiff alleged an onset date of June 2008,

10  when he last worked, he testified his job ended "only because his contract with state was not

11  renewed."  (AR 25.)   The ALJ, therefore, considered that plaintiff "stopped working for

12  reasons unrelated to his physical issues."  (*Id.*)   Plaintiff concedes that this serves as a clear

13  and convincing reason for finding a claimant not credible.   *Berry v. Astrue*, 622 F.3d 1228,

14  1235 (9th Cir. 2010).   He asserts, however, that he expressed concern as to his ability to return

15  to work given cognitive issues.   Yet, the citations provided reflect only petitioner's reference

16  to job-related stress.   (AR 241, 282.)   Plaintiff also contends the reason his job ended does not

17  undermine his claim that, at some later point, he was unable to return to substantial gainful

18  activity, and notes that he amended his alleged onset date to March 2009.   It remains, however,

19  that plaintiff alleged he was disabled beginning at a certain date, while later revealing that that

20  date reflected, not an inability to work, but the cessation of his work unrelated to his alleged

21  impairments.   The ALJ's consideration of this discrepancy was entirely appropriate.   *See*

22  *Berry*, 622 F.3d at 1235 (ALJ properly considered fact that claimant "claimed disability dating

REPORT & RECOMMENDATION
PAGE -15

01 from his last day of employment even though he admitted at the hearing that he left his job

02 because his employer went out of business and probably would have worked longer had his

03 employer continued to operate.")

04    The ALJ also found plaintiff's allegations of disability undermined by his receipt of

05 unemployment benefits for the period of June 2008 through September 2010.  He noted

06 plaintiff's admission that he certified to the State and that he was, in fact, "ready, willing, and

07 able to work[,]" as well as that he applied for multiple jobs, went to around fifty interviews, and

08 believed he was unsuccessful in his search because employers were looking for someone

09 younger.  (AR 25, 619-21.)  The ALJ noted that an employer's hiring practices "are not

10 pertinent to the determination of disability."  (*Id.* (citing SSR 82-40).)  Plaintiff contends he

11 was seeking less skilled, counselor work, and notes his testimony he at some point decided he

12 could not "do CPS work anymore."  (AR 625-26.)  However, plaintiff testified at hearing that

13 he applied for jobs both in his field, "social work[,]" and in counseling.  (AR 619-20.)  In

14 addition, while plaintiff also testified he began to search for only part time work as of

15 September 2010 (AR 621), the ALJ's decision accounts for that testimony by specifically

16 pointing to plaintiff's receipt of unemployment benefits prior to that date.  *Carmickle*, 533

17 F.3d at 1161-62 ("receipt of unemployment benefits can undermine a claimant's alleged

18 inability to work full-time," but record must establish that claimant held self out for full-time,

19 rather than part-time work:  "Only the former is inconsistent with his disability allegations.")

20 Also, plaintiff fails to demonstrate the relevance of the SSA's initial determination to this issue,

21 given that that decision was revised on reconsideration.

22    Finally, as the Commissioner observes, the ALJ also discussed plaintiff's activities in

REPORT & RECOMMENDATION
PAGE -16

01  detail.  (*See* AR 20 (noting plaintiff's long-term relationship; that he "cares for his personal

02  needs, prepares sandwiches, soups, pancakes, cereal, does the laundry, vacuums, washes

03  dishes, plays billiards once per week, manages his finances, and reads and watches television";

04  that his last work in 2007 and 2008 was as a counseling therapist for hard-to-manage teenage

05  youths; the reason his job ended and his subsequent job search; his return to school and success

06  in the quarter attended; his work in the community from 2008 to 2010; and his testimony he

07  likely could now work four hours a day, five days a week).)   This discussion reflects the ALJ's

08  proper consideration of activities inconsistent with the degree of impairment alleged.  *Orn v.*

09  *Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).   While addressed at step two, the Court finds it

10  pertinent to the assessment of plaintiff's credibility.

11       In sum, the ALJ provided a number of clear and convincing reasons for finding plaintiff

12  not fully credible.   His assessment should, therefore, be upheld.

13                                         <u>RFC</u>

14       As stated above, RFC is the most a claimant can do considering his or her limitations or

15  restrictions.   SSR 96-8p.  Plaintiff argues the ALJ erred in relying on the April 9, 2011

16  opinion of consultative examiner Dr. Lisa Garrison that he could perform medium work,

17  pointing to the November 11, 2011 finding of decreased light touch sensation from the midcalf

18  down.   (AR 26 (citing AR 340-45) and AR 545.)

19       This argument lacks merit.   The ALJ relied on medical opinions from both examining

20  physician Dr. Garrison and State agency medical consultant Dr. Hale that plaintiff could

21  perform medium work, while also reflecting consideration of "early signs of diabetic

22  neuropathy[.]"   (*Id.* (citing AR 340-45 and AR 45-56, 354-61).)   As the Commissioner

REPORT & RECOMMENDATION
PAGE -17

01  observes, while plaintiff notes a subsequent finding of decreased sensation on examination, he

02  provides no support for his contention that this finding represents a "worsening of

03  neuropathy[.]"  (Dkt. 14 at 13.)   In fact, the record contains evidence contradictory to this

04  contention in a later, November 23, 2011 finding of intact motor and sensory functioning in

05  plaintiff's extremities.  (AR 589.)   Further, the alleged error in the RFC finding as to medium

06  work is not, in any event, relevant to the ALJ's conclusion that plaintiff could perform his prior

07  work as a social worker – a job classified as light work.  (*See* AR 26.)

08                                    Past Relevant Work at Step Four

09       At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and

10  assess his work-related abilities on a function-by-function basis, including a narrative

11  discussion.  *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p.  Plaintiff bears the burden of

12  demonstrating he can no longer perform past relevant work.  20 C.F.R. §§ 404.1512(a),

13  404.1520(f); *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).  A claimant may be found not

14  disabled at step four based on a determination that he can perform past relevant work as it was

15  actually performed or as it is generally performed in the national economy.  SSR 82-61.  An

16  ALJ need not render "explicit findings at step four regarding a claimant's past relevant work

17  both as generally performed and as actually performed."  *Pinto v. Massanari*, 249 F.3d 840,

18  844-45 (9th Cir. 2001).  Instead, he need only make a sufficient finding pursuant to the

19  applicable regulations.  *Id*.

20       Plaintiff argues the new evidence discussed above calls into question whether he can

21  perform his past work.  That argument fails for the reasons discussed above.  Plaintiff also

22  argues the ALJ erred in making the determination that he can perform the mental demands of

01  his highly skilled past work without actually considering those demands and making the

02  requisite factual findings, noting that the ALJ limited his discussion to the physical demands of

03  the social worker position and did not take testimony from a vocational expert.   (AR 27.)

04       Although plaintiff bears the burden at step four, the ALJ retains a duty to make factual

05  findings to support his conclusion, including a determination of whether a claimant can perform

06  the actual demands and job duties of his past relevant work or the functional demands and job

07  duties of the occupation as generally performed in the national economy.   *Pinto*, 249 F.3d at

08  844-45 (citing SSR 82-61).   "This requires specific findings as to the claimant's [RFC], the

09  physical and mental demands of the past relevant work, and the relation of the [RFC] to the past

10  work."   *Id*. (citing SSR 82-62).   An ALJ may rely on two sources "to define a claimant's past

11  relevant work as actually performed: a properly completed vocational report, SSR 82-61, and

12  the claimant's own testimony, SSR 82-41."   *Id*. at 845.   The DOT is generally considered the

13  best source for determining how past relevant work is generally performed.   *Id*. at 845-46.

14       Plaintiff correctly notes that the ALJ limited his step four discussion of past relevant

15  work to the physical requirements of the social worker job.   (AR 27.)   However, the Court

16  declines to review that portion of the ALJ's decision in isolation.   *See Magallanes v. Bowen*,

17  881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties

18  for drawing specific and legitimate inferences from the ALJ's opinion.")

19       The ALJ, at step two, discussed plaintiff's mental impairments and abilities in great

20  detail, as well as job requirements of his past relevant work:   "I note that to work as a social

21  worker, one has to have the ability to advocate for individual clients, engage and communicate

22  with diverse population and groups, improve the problem-solving, coping, and development

REPORT & RECOMMENDATION
PAGE -19

01  capacities of their patients."   (AR 22.)   He took note of the fact that the social worker job "is

02  highly skilled, with a svp of 7[,]" and, at step four, cited the pertinent DOT occupational code.

03  (AR 22.)   The ALJ also discussed relevant testimony from plaintiff, including his admission he

04  continued to apply and interview for numerous social worker jobs during a time in which he had

05  alleged disability, and that, during that time, he was ready, willing, and able to work.   (AR 22,

06  25.)

07          As discussed above, the ALJ's conclusion that plaintiff's mental impairments caused no

08  more than mild limitations and the decision to include no mental limitations in the assessed

09  RFC has the support of substantial evidence.   The Court further observes that the record

10  contains a vocational report in which plaintiff had the opportunity to describe the job

11  requirements for his social worker position.   (AR 121-22 ("Form SSA-3369").)   *See also* SSR

12  82-61 ("A properly completed SSA-3369- F6, Vocational Report, may be sufficient to furnish

13  information about past work.") and *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (a

14  vocational expert's testimony can be useful, but is not necessary at step four).

15          As a general principle, an ALJ's error may be deemed harmless where it is

16  "'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d

17  1104, 1115 (9th Cir. 2012) (cited sources omitted).   The Court looks to "the record as a whole

18  to determine whether the error alters the outcome of the case."   *Id*.   In this case, assuming the

19  ALJ's failure to discuss the mental demands of plaintiff's past relevant work at step four

20  constituted error, the Court finds that error appropriately deemed harmless.   That is, reviewing

21  the ALJ's decision as a whole, the Court concludes that the ALJ's finding that plaintiff could

22  perform his past relevant work as a social worker as generally performed in the national

REPORT & RECOMMENDATION
PAGE -20

01    economy has the support of substantial evidence.

02                                   CONCLUSION

03         For the reasons set forth above, this matter should be AFFIRMED.

04         DATED this 29th day of October, 2013.

05

06                                             Mary Alice Theiler
07                                             Chief United States Magistrate Judge

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT & RECOMMENDATION
PAGE -21